1                 **UNITED STATES OF AMERICA**
             **FOR THE NORTHERN DISTRICT OF OHIO**

2                  **EASTERN DIVISION**

3                  - - - - -

4

5   UNITED STATES OF AMERICA,      )

6             Plaintiff,       )   Case No.

7               vs.          )   5:07CR460–1

8   LONNIE RAY KERESTES,         )

9             Defendant.       )

10

11                  - - - - -

12   TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE

13   JUDGE CHRISTOPHER A. BOYKO, JUDGE OF SAID COURT,

14       ON MONDAY, AUGUST 11TH, 2008

15      COMMENCING AT 11:00 O'CLOCK A.M.

16                  - - - - -

17

18

19

20   Court Reporter:          GEORGE J. STAIDUHAR
                            801 W. SUPERIOR AVE.,

21                            SUITE 7–184
                            CLEVELAND, OHIO 44113

22                            (216) 357-7128

23                  - - - - -

24

25

```
1    APPEARANCES:

2         On behalf of the Government:

3              OFFICE OF THE U.S. ATTORNEY
               BY:  MICHAEL SULLIVAN, AUSA
4                   CAROL SKUTNIK, AUSA
               801 W. Superior Avenue, Suite 400
5              Cleveland, OH 44113

6

7         On behalf of the Defendant:

8              OFFICE OF THE FEDERAL PUBLIC DEFENDER
               BY:  CARLOS WARNER, ASSISTANT FEDERAL
9                   PUBLIC DEFENDER
               Skylight Office Tower, Suite 750
10             Cleveland, OH 44113

11                       - - - - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2                     P R O C E E D I N G S

3              THE COURT:  Please be seated, ladies and

4    gentlemen.  Mr. Kerestes I see is present.  Mr. Carlos

5    Warner is here representing him; Mr. Michael Sullivan,

6    Ms. Carol Skutnik on behalf of the Government; Mr. Allen

7    Gold from probation.

8              We are here today for sentencing.

9    Mr. Warner, would you please go to the podium with

10   Mr. Kerestes?

11             MR. WARNER:  Thank you, your Honor.

12             THE COURT:  Mr. Warner, I will start with

13   you.

14             Have you received a copy of the presentence

15   investigation report and had sufficient time to sit down

16   with Mr. Kerestes and go over it in detail?

17             MR. WARNER:  I have, your Honor.

18             THE COURT:  Mr. Kerestes, I want to make

19   sure you have had sufficient time to sit down with

20   Mr. Warner, go over this presentence investigation report

21   in detail, and have him answer any of your questions to

22   your satisfaction.

23             Has that been done?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Okay.  Mr. Warner, I will start

4

1    with you.  Certainly, we have had a conversation in my

2    chambers, yourself, Mr. Sullivan, Ms. Skutnik, Mr. Gold

3    regarding various matters that were raised in the

4    presentence investigation report.  I do have your

5    memorandum in aid of sentencing, which I have read.

6            I do have the psychological report from

7    Joseph Sharis and also, of course, the one from the

8    Department of Public Welfare and Family Services, I

9    should say, in Pennsylvania regarding the assessment made

10   on the allegation against Mr. Kerestes.

11           I have read everything, and please, if you

12   will, address the report itself and the objections you

13   may have, and we will take it from there.

14           Go ahead, Mr. Warner.

15           MR. WARNER:  Thank you, your Honor.  May it

16   please the Court, we did have a long conversation in

17   chambers about the objections we presented and preserved.

18   I will just briefly cover them, and I have a few exhibits

19   for what I will call a third objection.  That goes

20   towards the pattern of abuse.

21           The three guideline objections, first of

22   all, is the denial of the acceptance of responsibility.

23   As we stated in our objections that are included in the

24   presentence report and in his acceptance that is in the

25   report, we believe he has fully accepted responsibility

5

1    for this offense.

2              Similar on obstruction of justice, you know,

3    we talked a rot about obstruction in the back.   There

4    were three people in this interview.   All three of us

5    were there, three people being myself, Mr. Gold, and

6    Mr. Kerestes.   I don't believe that he obstructed

7    justice, and I don't think he lied to Mr. Gold at any

8    point.

9              Bottom line is that he has vehemently denied

10   ever abusing any of his children, especially the ones

11   that were the subject of this report.   He said that to

12   Mr. Gold.   Mr. Gold indicated at some point he thought

13   that Mr. Kerestes was not being honest.

14              There was a question about whether or not he

15   has ever had sex with a minor and whether or not —

16   Mr. Gold recollects the question with a minor, even when

17   you were a minor.   I don't recollect that second clause.

18              I do recollect allowing him to answer that

19   question, even though I knew about these allegations from

20   Pennsylvania because Lonnie has been very firm in his

21   position then, now, and in the future; that he never did

22   anything to these children, and he is completely innocent

23   of it.

24              So I allowed him to answer that question.

25   Mr. Gold had some issue as to whether or not when he was

1   15 he had consensual sex with another 15 year-old and

2   whether or not that was lying.  That's just frankly silly

3   because that's not what the -- it has no relevance at

4   all, and secondly, that's not how we recall the question.

5   So we don't think there has been any obstruction here.

6          Most importantly is the third objection, and

7   that's whether or not there was a pattern of abuse, and

8   what this Court is forced to do is determine whether or

9   not, based upon this non adversarial proceeding, that was

10  prosecuted for lack of a better word by a social worker

11  where Mr. Kerestes had no interaction at all with the

12  proceedings during a contentious divorce, where he had no

13  notice of report at all on this case, where he simply got

14  a letter, which I will submit to the Court as Defendant's

15  Exhibit -- Government exhibits -- excuse me --

16  Defendant's Exhibit 2 and 3 -- I had to use Government

17  exhibit stickers -- from the Carbon County Children Youth

18  Services that there has been an indication -- there has

19  been an indication of abuse.

20         Based upon that and based upon Mr. Kerestes'

21  denial, which came immediately thereafter in a letter,

22  based upon those things, Mr. Gold and the Government are

23  arguing there is a pattern of abuse that should enhance

24  his sentence by five levels under the Guidelines.

25         As is stated in Mr. Gold's report, first

1  disclosure, which I have provided to the Court as, I

2  believe, the fourth exhibit, Lonnie at the time of the

3  interview vehemently denied it.  He denies today.  He

4  denied it back then.  It never happened.  I told Mr. Gold

5  that why wasn't there a prosecution?

6  　　　　　　Mr. Gold's answer to that -- and I don't

7  know what the Government wants to proffer on this -- but

8  Mr. Gold's answer to that was to the effect that in this

9  part of Pennsylvania these crimes are not prosecuted.

10  That's a preposterous answer.  There is no indication --

11  there is no police reports.

12  　　　　　　I believe the Government will not present

13  anything that would indicate that the state took any

14  action on this, criminal or otherwise, to get Mr. Gold as

15  advocating that there be a five-level increase based upon

16  this one-sided non adversarial report.

17  　　　　　　Bottom line is that Lonnie has a

18  constitutional right to maintain his innocence, and he

19  should not be punished under Oprendi, under all the law

20  that we have had recently from the Supreme Court for

21  conduct that has not been proven beyond a reasonable

22  doubt, and that's precisely what the probation officer

23  and the Government is intending to do now.

24  　　　　　　They are intending to increase his guideline

25  levels by five levels based upon a non adversarial

8

1    one-sided proceeding that Mr. Kerestes opposed as best he

2    could at the time and continues to, and that frankly

3    violates the Constitution. So we are asking that the

4    Court not impose that five-level increase.

5            Additionally, it should be noted that

6    Mr. Kerestes -- and this goes to the second argument --

7    but he has never hidden the fact that there is this

8    investigation. He told the FBI about it. He told

9    Pretrial Services about it; told Mr. Gold about it, and

10   therefore, we ask the Court what was he to do? How is he

11   to disprove this?

12           Bottom line is, he doesn't have to disprove

13   it; the Government has to prove it. They haven't done

14   it. They didn't do it in Pennsylvania, and we don't

15   believe they could hold their burden of proof today.

16           So on that basis, we would ask that that

17   objection be overruled as well. The Court can consider

18   the objections and the sentencing memorandum as

19   additional support for this argument. And unless the

20   Court wishes to hear my mitigation on Mr. Kerestes, I

21   can reserve that until after the objections are

22   determined.

23           THE COURT: Well, I am going to go ahead and

24   make my findings after all is said and done, Mr. Warner,

25   so please go ahead and on behalf of Mr. Kerestes in

1  regard to mitigation.

2       MR. WARNER:  Thank you, your Honor.

3       I will not rehash the entire sentencing

4  memorandum on this case.  Lonnie has been a client for

5  over a year now.  We were talking about it, and it has

6  been a very long road, and I have watched him go through

7  all the stages of loss that one goes through.  I have

8  talked extensively with his family.  I have talked

9  extensively with him.  We have met, I would say, dozens

10  of times within the past year, and I could just tell the

11  Court what I see in Lonnie and what I see from this point

12  forward.

13       No matter what the Court's decision is on

14  these objections there is going to be a term of

15  imprisonment here, and it is going to be a long one, and

16  that's different for this gentleman.  This gentleman has

17  up to this point lived a completely law abiding life.  He

18  is not like most of our defendants, especially -- we do

19  have some defendants here with no Criminal History.

20       But you look at what Mr. Kerestes has done

21  up to this point in his life, he served in the Armed

22  Forces.  He was a Marine.  After he was a Marine, he was

23  a corrections officer.  He has fathered children.  He has

24  been, despite what these reports might say, a very good

25  father, and there is support for that in my sentencing

1    memorandum.  He is a loved son by his mother Nancy.

2                    Lisa O'Brien is disturbed about what was

3    going on here.  Lisa O'Brien is Mr. Kerestes' fiancee,

4    mother to his children.  She understands what is going

5    on.  She begs the Court to give him help but that being

6    said also realizes that he is an important part of those

7    kids' lives, and she, knowing the allegations full well,

8    wants him back home to assist her and to be a father to

9    these children.

10                    You know, what we do in this Court is based

11   upon burdens of proof, and we do that so we don't just

12   jump to conclusions as it applies to people, and I am

13   begging the Court not to jump to the conclusions that

14   both the probation office and the Government are asking

15   the Court to make here.  He made a very sad and sorry

16   mistake when he came here to Ohio, and he would be the

17   first one to tell you that.

18                    He regretted that mistake from the first

19   moment, and I asked him, you know, why?  What happened

20   here?  I think he addressed it somewhat in his acceptance

21   of responsibility, but the bottom line is that he has

22   some problems that need to be worked on.  All of us have

23   some problems.

24                    He realizes that his problems are severe and

25   have changed really the rest of his life, but that being

1      said, he has never once expressed a desire not to work on

2      the problems.  He never once said, you know, I didn't do

3      this.  He showed remorse from the beginning, and he is

4      just doing his best to make this better, and I told him

5      all you can do to make this better is to focus on the

6      future from this point forward.

7                  If you look back, it is going to be painful,

8      but you can redeem yourself, and you can do it by doing

9      what you have to do to get back to your family and also

10     doing what it takes to be healthy.  And I think he is

11     willing to do both of those things.

12                 And I would ask the Court to consider those

13     things and consider this gentleman in imposing a sentence

14     that is sufficient but not greater than necessary.

15                 I have gone through all those factors in my

16     sentencing memorandum.  I am not going to rehash them,

17     but frankly, a sentence in the range we believe

18     appropriate, 23, would be sufficient and not greater than

19     necessary to do all the things that the statute requires

20     and also to protect the public.

21                 This is a gentleman that the Court has the

22     discretion to put on a lifetime supervised release, and

23     that sanction in and of itself for somebody with no prior

24     Criminal History is the kind of sanction that allows

25     protection for the public but also allows the

1    rehabilitation of Lonnie.  And we would ask that the

2    Court consider that in imposing a low end or guideline

3    sentence at Criminal History level 23.  That's all that I

4    have.

5            I know that he would like to speak to the

6    Court as well, and I would like to reserve in case there

7    is something that needs to be addressed in the

8    Government's presentation.

9            THE COURT:  Mr. Warner, thank you.

10           Mr. Kerestes, is there anything you wish to

11   say?

12           THE DEFENDANT:  On August 8, 2007, I

13   committed a crime, and I am very sorry for that, your

14   Honor.  It has been a long road for the last year.  I

15   lost just about everything in my life:  My job, my

16   family, friends, some relatives.  I just ask that justice

17   be served, and you can see a light and allow me to work

18   on what I need to work on, get counseling, that I need,

19   and I am sorry.  I can't go on.  I'm sorry.

20           Thank you, your Honor.

21           THE COURT:  All right, Mr. Kerestes.

22           Mr. Sullivan, your thoughts on behalf of the

23   Government?

24           MR. SULLIVAN:  Thank you, Judge.

25           First, addressing the objections to the PSR,

1    as far as the obstruction of justice, the additional

2    points of obstruction of justice and Mr. Gold's

3    recommendation that the Defendant not receive acceptance

4    of responsibility, Judge, it is clear that in this case

5    Mr. Kerestes from the time he was interviewed by the FBI

6    agents, when he was interviewed by pretrial and then,

7    lastly, when he was interviewed by Mr. Gold conveyed the

8    impression with all those authorities that while there

9    was a previous allegation of sexual molestation against

10   him, it was the product of an ugly divorce and there was

11   nothing to do, and there was no basis for it and nothing

12   came of it.

13          We know now that that's not entirely the

14   case.  While no criminal prosecution may have come from

15   it, Mr. Kerestes was notified that the case was indicated

16   by the state of Pennsylvania.  And Judge, I believe -- I

17   believe you have been provided with the documentation

18   from the state of Pennsylvania as well as the

19   psychological assessment of Mr. Kerestes.

20          I would ask that those be marked as part of

21   this sentencing hearing, preserved, and also that they be

22   sealed.  Additionally, I would ask that the exhibits that

23   Mr. Warner proffered to the Court be sealed because if

24   they contain the child's name, the child's name is

25   contained, that can't be a public record.

1           But going back to my argument, clearly, he

2      was committing the impression that nothing came of it,

3      but something did.  It was indicated.  He was told it was

4      indicated, and to prove that, we know he appealed that,

5      he appealed that finding.  He appealed that finding to

6      the state of Pennsylvania, and he was notified that his

7      appeal was rejected, and that they stood by their finding

8      that it was an indicated case.

9           So he did know that something came of it.

10     So as far as obstruction goes, we would rely on the

11     Court's analysis, but from the Government standpoint, we

12     feel that the evidence shows that Mr. Kerestes misled the

13     FBI agents at the beginning after he was arrested, the

14     Pretrial Services as well as Mr. Gold during his

15     interview of probation.

16          So certainly, we feel Mr. Gold was justified

17     in the report adding the points for obstruction and

18     not recommending the points for acceptance of

19     responsibility.

20          As far as the enhancement for pattern of

21     activity, the Government's position would be that the

22     evidence that we have just asked the Court to accept and

23     mark clearly sets forth by a preponderance of the

24     evidence that Mr. Kerestes engaged in this pattern of

25     activity, and Mr. Warner is just, frankly, wrong about

1    comparing this to Oprendi.  This is not an Oprendi

2    situation.  The case law is clear that the Court can

3    engage in fact finding at sentencing for relevant

4    conduct, and relevant conduct can support enhancements.

5            Indeed, the Sixth Circuit in the case of

6    David Brown, which was decided in November of 2006,

7    involved just such a finding where the Sixth Circuit

8    upheld the application of the same enhancement of

9    Mr. Brown, and the case law is clear that the Court can

10   engage in that fact finding, and that the standard of

11   proof is preponderance of evidence.

12           That being said, frankly, I don't think

13   someone could read -- Mr. Warner again minimizes as this

14   being some type of investigation done by a social worker.

15   That's not the case.  If you read through it carefully,

16   Judge, and I know you have, that is a very detailed

17   assessment of the child done by a licensed psychologist,

18   not just by a social worker but by a psychologist who

19   carefully quotes and goes through the interview process

20   with that child.

21           I can tell you from someone who has

22   prosecuted child abuse for over almost 20 years, that was

23   a carefully done interview of that child, and if you read

24   it, anybody that reads it I think would certainly come

25   away finding what was in that report and to be credible

1     information from that child alleging the acts of abuse

2     that that child suffered at the hands of Mr. Kerestes.

3                    And frankly, even Mr. Kerestes'

4     psychological report, while he denies it, even the

5     psychologist was certainly not overly impressed with

6     Mr. Kerestes himself and found that he was certainly

7     minimizing, shifting the blame on a lot of things.

8                    In addition -- and we know this to be the

9     case -- that he also, Mr. Kerestes in here, was accused

10    of incidents involving child pornography, which he denied

11    to that psychologist.  And we know, while it is not part

12    of this case, certainly, we know that that -- there was

13    certainly evidence of child pornography on Mr. Kerestes'

14    computer back in Pennsylvania, which still --

15                    MR. WARNER:  Your Honor, I am objecting to

16    that, and that's the kind of evidence the Court should

17    not, cannot rely on in this hearing.  I want to make that

18    clear for the record.

19                    THE COURT:  All right.  I am not going to

20    rely on the child pornography.

21                    Go ahead, Mr. Sullivan.

22                    MR. SULLIVAN:  Well, Judge, also, I indicate

23    that -- well, we will get to that next.

24                    Reading that psychological assessment of the

25    child, I think there is clear evidence by a preponderance

1    of the evidence that Mr. Kerestes did engage in that

2    pattern of activity, and therefore, the Government would

3    submit that that enhancement is supportive as well.

4            As to the sentence in this case and other

5    comments made by Mr. Warner, by Mr. Kerestes as to

6    Mr. Warner, Mr. Warner claims that Mr. Kerestes -- and I

7    believe the part his girlfriend wants to welcome him

8    back, wants him back, but I think he relies on the letter

9    submitted to this Court.

10            But I would note that the letter submitted

11    to this Court is dated October 2007 and November of 2007,

12    and in the report prepared by Mr. Gold, indeed, I believe

13    he indicates that based on his interview of the

14    girlfriend, Mr. Kerestes was not going to be welcome back

15    in that home, and she indicated that he would not be able

16    to return to her home when he was released from prison.

17            And that would also be supported by the

18    fact -- and Mr. Warner can object -- but in this case,

19    the girlfriend did cooperate with authorities in turning

20    evidence over to the authorities subsequent to

21    Mr. Kerestes coming to Ohio.  So I would say whether or

22    not she is going to be welcoming him home is certainly

23    doubtful.

24            As to the comments of Mr. Kerestes, he says

25    that on August 8, 2007, he committed a crime.  He made a

1    mistake.  Well, it was not just August 8, 2007, Judge.

2    He started chatting first of all with this undercover

3    officer on July 18, 2007, to try to have sex with a 14

4    year-old child, and more importantly, he started chatting

5    in -- I am not sure -- in a chat room, a chat room

6    entitled m-e-i-n-u-r-d-o-t-p-a.

7                Now, when Mr. Kerestes was interviewed by

8    the agents, he admitted that that stood for "me and your

9    daughter Pennsylvania," and that he created that chat

10   room.  So he didn't just make a mistake on August 8th.

11   He created a chat room to find women willing to let him

12   have sex with their daughters.  He created a chat room,

13   "me in your daughter, or "me and your daughter in

14   Pennsylvania."

15               He said it was "me and your daughter,"

16   although it was spelled "me in your daughter".  Either

17   way, he created a chat room advertising his desire to

18   engage in sexual activity with children, to try to find

19   women who were willing to let them meet their daughter

20   for sex.  So this was not just an isolated incident of

21   him just making a mistake.  He was seeking out children

22   to have sex with.  He found someone he felt was willing,

23   and he traveled from Pennsylvania to Ohio to engage in

24   sexual activity with a child.

25               Judge, we believe the Guidelines are the one

1      sentencing factor that takes into account all the other

2      factors that take into account the seriousness of the

3      offense, the background of the Defendant, the need for

4      punishment.  They take all that into account, and the

5      Government believes that the Guidelines range is a range

6      of sentence that comes to a sentence that is sufficient

7      but not greater than necessary to achieve the goals of

8      sentencing, and I would ask you to administer such a

9      sentence.

10                 THE COURT:  All right.  Thank you.

11                 Mr. Gold, I am going to give you an

12     opportunity to be heard also because not only were you

13     part of our conversation in chambers, but Mr. Warner made

14     statements that I will allow you to respond to if you so

15     wish.

16                 MR. GOLD:  Thank you, your Honor.

17                 I believe I can remain with that -- with

18     the accuracy of my report without adding additional

19     comments.

20                 THE COURT:  Very well.  We will let it go at

21     that.  Let's take a look at the presentence investigation

22     report and see --

23                 MR. WARNER:  Judge, just for the record, if

24     it pleases the Court, can I just respond to a few things?

25     There is a high likelihood based upon the Court's ruling

1    that there could be an appeal either way.  I think there

2    are some things that ––

3                    THE COURT:  Go ahead, Mr. Warner.

4                    MR. WARNER:  –– and I will keep it brief.

5                    First of all, again, I want to underscore

6    the fact that there is no cross–examination here, no

7    Court review at all.  There is no defense at all

8    organized, presented to this, and the fact that in this

9    hearing Mr. Sullivan had an opportunity, this has been

10   continued many times, to coordinate some evidence that

11   might show a preponderance here.

12                    But instead he has relied only on the work

13   of the social worker, and that's frankly what she is.

14   And Mr. Sullivan said in his 20 years of experience this

15   occurs often.  I am saying my eleven years of defense

16   experience in the county, trying these cases, even

17   against Mr. Sullivan, often we find that Children

18   Services workers are not the most fair and balanced

19   people, and that it is a–one sided investigation.

20                    And I think the Court coming from the same

21   background has experience with this as well.  So to rely

22   on this, to say there is a preponderance based upon what

23   a social worker is saying when it has been denied the

24   entire time is wrong.

25                    And finally, Dr. Sharis in his report

1    itself, not to the obstruction but to this five-level

2    enhancement, makes some comments that are very important.

3    He is from this area, and I think both Mr. Gold and

4    Mr. Sullivan have, at least, implied, well, often things

5    aren't prosecuted for whatever reason.  Well, he is from

6    this area, and he even indicates in his report that, you

7    know, because there is no prosecution, no indictment, it

8    is hard to proceed and know what happened here.

9                  I think that that is the best evidence the

10   Court could rely on in not imposing the five-level

11   enhancement.  That's all I have, and I thank the Court

12   for this opportunity and time.

13                  THE COURT:  Certainly.  Thank you,

14   Mr. Warner.

15                  MR. SULLIVAN:  Judge, and I'm sorry.

16                  THE COURT:  Okay.  Last time, and then we

17   are going to move on.

18                  MR. SULLIVAN:  Yeah.  Just that you talk

19   about the social worker, the report I was referring the

20   Court to was from John A. Reinhart, Ph.D. licensed

21   psychologist.  It was not a social worker for the

22   Department of Children's Family Service.  It was not a

23   she for that matter.  He is clearly referring to a

24   different report.

25                  I am referring to the psychological

1      evaluation that was done of this child by John A.

2      Reinhart, Ph.D., licensed psychologist.

3                  THE COURT:  All right.  Let me -- just so

4      that we are clear, first of all, I am going to place

5      under seal the exhibits that Mr. Warner has marked 1, 2,

6      3, 4.  I will mark the Court's Exhibits A and B.  And A

7      will be the Renaissance Psychological and Counseling

8      Corporation, Inc. psychological evaluation of the

9      daughter by John A. Reinhart, Ph.D., licensed

10     psychologist.

11                 The Court will be relying upon that, and

12     also, we will mark as the Court's Exhibit B the

13     psychological associates of Schuylkill County -- that's

14     S-c-h-u-y-l-k-i-l-l, and that's by Joseph Sharis, MA,

15     NCC, CCMC after his name, licensed psychologist, and that

16     was done on Mr. Kerestes.  That will be B, and again,

17     both of those will also be sealed.  Date of evaluation

18     for Dr. Reinhart's report 5-27-06, and Mr. Sharis, I

19     think that was 3-21-05.  Now we are clear on that.

20                 Let's take a look at the report.  We have

21     Count 1, travel to engage in illicit sexual conduct with

22     a minor, a class B felony.  The indictment was filed on

23     August 29th, 2007.  The Defendant pled guilty to the

24     offense of interstate travel for purposes of sexual

25     conduct with a minor.  He pled on February 26 of 2008.

1   There is no plea agreement in this matter.  Mr. Kerestes

2   has been in custody since his arrest.

3            As far as the offense conduct, we will use

4   this both as the nature and circumstances of the offense

5   once we get to the 3553(a) factors and the offense

6   conduct itself.  In this matter, 37 year-old Mr. Kerestes

7   faces sentence for his first conviction.  He was

8   convicted of communicating over the internet with an

9   individual he believed to be a 41 year-old woman with a

10  14 year-old daughter between July 18, 2007, and August

11  8th of 2007.

12           The Defendant sought to have the mother

13  teach her daughter various sexual acts with the Defendant

14  as participant.  He traveled from Pennsylvania to Ohio in

15  order to meet them and to perform these sexual acts with

16  the pair.  That's a summary of what happened here.  Okay.

17           Victim impact:  There are no actual victims

18  in this case.  We did have an undercover officer posing

19  as the mother who was willing in the scenario to provide

20  access to her daughter, age 14, for sexual purposes.  As

21  far as adjustment for obstruction of justice, I know that

22  Mr. Gold is recommending and as well as Mr. Sullivan is

23  recommending for obstruction, as I stated in chambers,

24  this is a close call.

25           There has been indications that Mr. Kerestes

1  said there was nothing found.  I could see where Mr. Gold

2  would take that to mean there was no finding by the state

3  of Pennsylvania, and Mr. Sullivan alluded to the FBI

4  being misled by Mr. Kerestes.

5  I can also see the argument by Mr. Kerestes

6  that nothing came of it.  At the end, i.e., he was never

7  prosecuted for it, or it never went beyond the finding

8  and the appeal.  There is no dispute, and there shouldn't

9  be no dispute that this was -- that there was indication

10  of molestation on his daughter and an appeal by

11  Mr. Kerestes to that finding.

12  Again, that is really undisputed, and the

13  Court so finds.  It is the interpretation of the words

14  and by what Mr. Kerestes meant by -- by it didn't go

15  anywhere, and certainly, that could mean that it was

16  never prosecuted and stopped at that level.

17  It is close enough that I am not going to

18  punish him for that obstruction part, so I will make no

19  addition for obstruction.

20  As far as acceptance of responsibility, I

21  will find that he has accepted responsibility for this

22  crime.  He has been consistent that he denied previous

23  behavior, but I will find that he has accepted

24  responsibility.  There certainly has been recommendations

25  from probation department as a whole on much less than

1  what we have here.  I am going to accept his statement to
2  be sufficient for reduction.

3          Offense level computation, the 2007 edition
4  of the Guidelines manual was used, and starting off with
5  a base offense level of 24, we do add two for a specific
6  offense characteristic of Defendant using a computer to
7  communicate with the victims.  No victim related
8  adjustment.  No adjustment for role in the offense.
9  There will be no adjustment for obstruction of justice.
10 Court will grant three-level reduction for acceptance of
11 responsibility.

12         Where does that put us at that point?
13              MR. WARNER:  23, I believe, your Honor
14              THE COURT:  Correct.  23 for adjusted
15 offense level.

16         Now, as far as Chapter 4 enhancements -- and
17 I understand this is -- excuse me -- I want to say
18 probably the main argument, the main objection, I have
19 read both reports in detail, that is, by Dr. Reinhart and
20 also by Mr. Sharis.  I have taken a look at this case as
21 a whole.  Nothing should ever be read as an island so to
22 speak or on its own.

23         There has to be context to what has happened
24 in this case, and for purposes of the Court's finding
25 whether there should be a Chapter 4 enhancement for

1  pattern of activity under the Guidelines.

2  Now, Mr. Kerestes' daughter was evaluated.

3  I would have to agree with Mr. Sullivan this is a very

4  good report.  I have seen countless numbers of reports in

5  my twelve years on the bench.  This is a good one.  I

6  also took a look at Mr. Sharis' report.  Let's start with

7  the difference:

8  First of all, the daughter and the mother

9  were both interviewed on the first report.  Only

10  Mr. Kerestes was interviewed by Mr. Sharis.  It does make

11  a difference.  Mr. Sharis did not have the benefit of

12  talking with the daughter or the mother, quite frankly.

13  Now, as far as the first report by

14  Dr. Reinhart, Mr. Kerestes has raised consistently the

15  allegations of a very contentious divorce.  I don't doubt

16  that, and in his view, this is what has caused the mother

17  to have the child turn against him.  We have seen that in

18  many cases.  That's not unusual.  I don't find that

19  convincing in this case.

20  Her reports are specific, and I am looking

21  at the discussion part, which I thought was very

22  relevant, developmentally appropriate, describing various

23  sexual acts and occurrences.  (Child's name redacted)

24  report of one large memory is clinically consistent,

25  indicative of reports given by children who experience

1    long—term sexual victimization, and here is what is

2    crucial, especially when there is a very contentious

3    divorce, the statements provided by (Child's name

4    redacted) "did not have any adult content, logic, or

5    semantics involved, and her statements appear to be

6    indicative of an 11 year—old female."

7              That is very important because normally when

8    we have a child being pressured or talked to, coached by

9    a parent, there is something in there that reflects adult

10   influence.  I don't find that here.  Also, her rationale

11   for not disclosing in the past was very clear and

12   specific due to fear of reprisal from her father and

13   based upon her general fear that she had of his anger

14   within the home.  I will find that to be credible, too,

15   because Mr. Kerestes himself suffered some abuse growing

16   up.

17             We usually find that somehow and many times

18   that is passed down in one way or another.  That is

19   consistent.  And also the fact that he tried or sought to

20   have sex with a 14 year—old is also consistent.

21             I would agree with Mr. Sullivan and disagree

22   with Mr. Warner on the part that there is a

23   constitutional violation.  Clearly, the law —— the

24   Supreme Court of the United States has made clear that

25   the Court can make findings; does not violate the

1    Constitution.  It is appropriate for the Court to make

2    findings.

3              There is preponderance of the evidence, and

4    second of all, the Guidelines are advisory.  They are not

5    mandatory.  The Court has discretion whether to accept

6    the Guidelines, stay within them, go up, go down, that is

7    depart, grant a variance under 3553(a).  The Court has

8    been given great latitude to do that, and there is no

9    constitutional violation.

10             The Court is called upon to make a finding,

11   and that is whether under -- by a preponderance of the

12   evidence this occurred, and as we know, that means more

13   probable than not, anything over 5-0 percent.  I do find

14   that here.

15             I would not find it beyond a reasonable

16   doubt, and getting to that burden would be difficult, and

17   certainly, that could be an explanation, a reasonable

18   explanation as to why this was not prosecuted.  There are

19   many jurisdictions that do not prosecute these types of

20   cases unless they believe they can prove it beyond a

21   reasonable doubt, and many times the word of the child

22   without any corroborating evidence, medical or otherwise,

23   is not good enough for the prosecution.  That's

24   understandable.

25             It has been my experience since I came here

1    that this U.S. Attorney's Office will not indict unless

2    they believe they have someone beyond a reasonable doubt,

3    quite frankly, very different from the county, which,

4    Ms. Skutnik, you will find as one of the differences.

5               However, getting back to the issue, I do

6    find it by a preponderance of the evidence; does not need

7    to be more than that, and again, I would not find it

8    beyond a reasonable doubt, and the Court doesn't have to

9    in order to find a pattern of activity.

10              And again, Mr. Sharis' report, he didn't

11   have the benefit of interviewing (Child's name redacted).

12   He does make a statement, "although deviant sexual

13   interest in children was not identified by the AASI, this

14   may need to be considered tentatively."  Makes a couple

15   other statements.

16              "Although conclusions are limited due to his

17   denial, the role of narcissistic and antisocial traits

18   combined with generalization of sexual behaviors cannot

19   be ruled out as a pathway to offending."

20              He does waffle back and forth.  In fairness

21   to Mr. Warner, he has pointed that out, but again, he did

22   not have the benefit of interviewing the child.  So

23   that's the finding of the Court by a preponderance of the

24   evidence.

25              The five levels will be added as a Chapter 4

1    enhancement.  I believe that brings us to a 28 for a

2    total offense level.

3                   MR. WARNER:  Judge, I hate to interrupt ––

4    and I thank the Court for its ruling –– I would like to

5    just put a couple other things on the record for purposes

6    of appeal before the Court renders sentence if that's

7    okay.

8                   THE COURT:  Go ahead, Mr. Warner.

9                   MR. WARNER:  –– and I think this is the

10   right place to put it.

11                  First of all, that the psychiatrist and the

12   social worker who prepared the report did not interview

13   Lonnie, same thing, but Mr. Sharis had the benefit of the

14   report.  Also, the Court, I believe, made a finding that

15   molestation is passed down generally, and that's –– I

16   believe the science would indicate that that's not the

17   case and ––

18                  THE COURT:  I didn't say that.  I didn't say

19   molestation was passed down, but abuse, and it manifests

20   itself in different ways.

21                  MR. WARNER:  Okay.  Yeah.  We would dispute

22   that, and we could provide the Court with that, but most

23   importantly, we also want to preserve a Crawford

24   violation here as well because I believe Mr. Kerestes,

25   when sentenced, depending what the Court does now, is

1    increased here, and he has had no opportunity to

2    cross-examine or otherwise challenge this obviously

3    testimonial evidence, and we believe that it is a

4    constitutional violation for the Court to rely on it.

5    So I would like the Court to put that in the record as

6    well.

7              THE COURT:  All right.  Mr. Warner, thank

8    you.

9              Mr. Sullivan, I will allow you to respond at

10   this point for purposes of the record, too.

11             MR. SULLIVAN:  Judge, hearsay is admissible

12   at a sentencing hearing.  This is not a trial so it would

13   not be a Crawford violation.  But just while I am up on

14   my feet though, Judge, if you could just order when you

15   were reading the report, you did mention the child's name

16   a couple times, if you could order that to be redacted

17   when this record is prepared.

18             It is now with the Court of Appeals all

19   records on appeal are electronically filed, and if you

20   could order the name be redacted in preparation of this

21   record, the child's first name.

22             THE COURT:  We will do that.

23             Thank you.

24             MR. SULLIVAN:  And we discussed it in the

25   back, but for the record, the Government would make a

1      motion for the third point for acceptance.  I know you

2      granted it, but I already told you we would make it based

3      on these crimes, and I just wanted to make that part of

4      the record.

5                  Thank you.

6                  THE COURT:  Thank you, Mr. Sullivan.  All

7      right.  Let's move on.

8                  Defendant's Criminal History, there is none.

9      No juvenile adjudications, no adult criminal convictions.

10     Therefore, he is automatically placed in category I.  As

11     far as offender characteristics, Mr. Kerestes was born in

12     Pennsylvania, 1970.  His mother resides in North

13     Carolina.  She is retired.  Father passed away.

14                 They were divorced when Mr. Kerestes was in

15     his late teens.  He does have one brother, and he also

16     has two step brothers and a step sister.  He was raised

17     primarily in Pennsylvania by both parents.  There was

18     trouble between him and his father.  He maintains a good

19     relationship with his mother, but he and his father did

20     not get along.

21                 He claims his childhood was confusing due to

22     moving around a lot.  The father apparently couldn't hold

23     down a job or wouldn't hold down a job.  There was

24     allegations by the mother of the Defendant's father

25     sexually molesting the sister.  There was also concern

1    about the Defendant.

2              At 18 he left home, joined the Marine Corps.

3    He met MD.  They married in August 1992.  Divorce is

4    pending.  There is two children, ages 14 and 10.  The

5    female is the one we are talking about, age 14.  Problems

6    in the marriage led to the pending divorce.  However, it

7    does indicate -- she did indicate, that is, the spouse,

8    that the Defendant was a good provider with respect to

9    child support.

10             Mr. Kerestes does have three children with a

11   significant other:  Age 3, ages 3, 2, and 1.  It appears

12   at this point the relationship will not continue.

13   Mr. Kerestes did reside with her at the residence from

14   October of '03 until his arrest for the present offense.

15   Physical condition appears to be good.

16             Mental and emotional health:  Some issues

17   with depression after he separated from his wife.  It is

18   usual to have depression since the arrest.  There is

19   nothing unusual about that.  We have gone through the

20   denials of the sexual contact with his daughter.  No need

21   to repeat that.

22             Defendant does have a history of physical

23   and emotional abuse by his father, and he agrees he would

24   benefit from treatment to address the issues.  And he has

25   asked for help.  The Court will do its best to grant him

1  that help.

2  Substance abuse:  When he was 16, he smoked

3  Marijuana about six times, alcohol, began at the age of

4  15.  He indicated he drank excessively when in the

5  military.  He admitted he had a problem with alcohol, and

6  he eventually stopped drinking.  Educational and

7  vocational skills, he graduated from Panther Valley High

8  School in 1988 and reports graduating from Carbon County

9  Vocational Technical School in Pennsylvania in 1988

10  studying auto mechanics.

11  Military record:  He entered the Marine

12  Corps in 1988; separated in 1996 with an honorable

13  discharge; rank of E-5 as a sergeant.  Employment 2004 to

14  2007, he was employed by Toby Hanna Army Depot in

15  Pennsylvania as a mechanic.  From 2003 to 2004, he was

16  employed by Defense Support Services.  1998 to 2003, he

17  was employed by the Pennsylvania Department of

18  Corrections as a correction officer and prior employment

19  was as a mechanic in the private sector as well as the

20  Marines; worked on both gas, diesel, and multi-fuel

21  vehicles.

22  Financial condition doesn't look good.  Our

23  analysis leads us to believe that he does not have the

24  resources to pay a fine, cost of prosecution, or any

25  other costs of these proceedings.  Sentencing options for

1    the Court, under the statute, the maximum term is 30

2    years.  Under the Guidelines, based on the total offense

3    level of the Court finding now of 28, Criminal History

4    Category I, our range is 78 to 97, Mr. Gold?

5               MR. GOLD:  Your Honor, that would be 46 to

6    57 months at an offense level of 23.

7               MR. SULLIVAN:  28.

8               MR. WARNER:  Yeah.

9               MR. GOLD:  I apologize, at a 28, that would

10   be 78 to 97 months.

11              THE COURT:  Right.  I believe that was the

12   Court's finding, right?  Okay.  Thank you.

13              Again, no plea agreement in this matter.

14   Supervised release under the statute, it is not more than

15   five years, however.  18 U.S.C. 3553(a)(3)(K) provides

16   that a term of supervised release is at least five years

17   and may be any term of up to life for violation of 18

18   U.S.C. Section 2423(b).

19              Under the Guidelines, it is at least three

20   years but not more than five years.  Additionally, the

21   term of supervised release may be any term to life under

22   the Guidelines.

23              And the policy statement, if the instant

24   offense of conviction is a sex offense, however, the

25   statutory maximum term of supervised release is as I

1    recommended.  Probation under the statute:  Is not

2    eligible because it is a class B felony.  Under the

3    Guidelines, again, not eligible because it is a class B

4    felony.  He falls in Zone D of the sentencing table and

5    not eligible for probation.

6            Mandatory drug testing does apply unless the

7    Court finds based upon reliable sentencing information

8    that Mr. Kerestes would indicate a low risk of future

9    substance abuse.  Under the statute, that is, 3563 and

10   3583 of 18 U.S.C., Defendant is required to register

11   under the Sex Offender Registration and Notification Act

12   and must comply with the requirements of that Act as

13   directed by the probation officer.

14           Fines under the statute, the maximum fine is

15   $250,000, and special assessment of $100 is mandatory.  I

16   believe our range is $12,500 to $125,000.

17           Mr. Gold?

18           MR. GOLD:  That's correct, your Honor.

19           THE COURT:  Thank you.

20           Again, a special assessment must be imposed

21   on a convicted Defendant.  Paragraph 85 gives us the

22   factors the Court must look at in determining the amount

23   of any fine.  I will find those to be irrelevant since

24   Mr. Kerestes has no ability to pay any fine.  Restitution

25   is not in issue.

1           Factors we consider in imposing sentence

2    under U.S. versus Booker and the U.S. Sentencing

3    Commission.  There is a three-step analysis:  One,

4    determine the appropriate guideline range; two, identify

5    any possible guideline departures, and three, determine

6    if a non guideline sentence that is a variance can be

7    considered under 18 U.S.C. 3553(a).

8           Our advisory range is 78 to 97 months.

9    Mr. Gold has not identified any factors that may warrant

10   a departure outside of the range.  The Court must impose

11   a sentence sufficient but not greater than necessary to

12   comply with the purposes of sentencing set forth under

13   3553(a).  We must take a look at the nature and

14   circumstances of the offense, history and characteristics

15   of the Defendant, the need for the sentence imposed and

16   the kinds of sentences available.  Mr. Gold has not

17   identified any sentencing factors that may warrant a

18   variance.

19           Mr. Warner, at this point, are there any

20   other unresolved objections, concerns that have not be

21   placed upon the record at this time?

22           MR. WARNER:  No, your Honor.  We do have a

23   requested recommendation for the BOP for placement.  I

24   can do that now or --

25           THE COURT:  We will wait until at the end.

1              MR. WARNER:  Okay.  Thank you.

2              THE COURT:  But don't forget that.  Thank

3    you.

4              Mr. Sullivan, at this point, any unresolved

5    objections or concerns by the Government?

6              MR. SULLIVAN:  No, Judge.

7              THE COURT:  Okay.  All right.

8              Let's move on to the 3553(a) factors.  The

9    Court has already gone over the nature and circumstances

10   of the offense via summary.  Both sides and the Court

11   have read the reports.  Let's move on to the history and

12   characteristics of the Defendant.  Take a look at prior

13   record:  Violence, physical abuse, diminished capacity,

14   employment, age, substance abuse, and family ties.

15   Mr. Kerestes has no prior convictions but was indicated

16   to have molested his prepubescent daughter.

17             He then attempted to have sex with a

18   14 year-old girl along with the mother.  He has no known

19   history of violence, abuse, or diminished capacity, a

20   limited history of Marijuana use.

21             While in the military he reported drinking

22   heavily but does not appear that he has chemical

23   dependency problems at this time.  He does have a regular

24   work history, primarily as a mechanic, which he did in

25   the military and private sector.  He was also previously

1    a correctional officer.  His mother resides with his step

2    sister in North Carolina.  His father is recently

3    deceased.

4            He has one brother and a step brother who

5    live in Pennsylvania.  Mr. Kerestes is married but

6    separated from his wife; a divorce is pending.  His wife

7    and their children reside in Pennsylvania.  His former

8    girlfriend and their children also live in Pennsylvania.

9            Indications of physical and emotional abuse

10   that Mr. Kerestes has suffered at the hands of his father

11   and allegations of molestation by his father against his

12   sister.  Need for sentence imposed:  I will come back to

13   that when I actually sentence Mr. Kerestes.

14           Kinds of sentences which are available:  The

15   Court has already gone over all of those in detail.  No

16   need to repeat.  Sentencing disparities:  We look at

17   defendants with similar records and conduct, and options

18   that Mr. Kerestes faces are consistent with those with

19   similar backgrounds and similar findings by the Court.

20   No co-defendants in this case.  Restitution is not

21   applicable.

22           We will move back to need for sentence

23   imposed.  We will take a look at just punishment, afford

24   adequate deterrence, protect the public, reflect the

25   seriousness of the offense, and improve offender conduct

1   and condition.

2          Mr. Kerestes, I think you've already

3   acknowledged the fact that you have to work out some

4   significant issues in your life.  I think your childhood

5   was probably pretty traumatic for you because it seems to

6   be manifesting itself in your behavior.  When things get

7   tense, I think you indicated that you wanted to, I guess,

8   in escape live out your fantasy and sought to have sex

9   with what you thought was a 41 year-old mother and a

10  14 year-old daughter.

11          Indications are correct by Mr. Sullivan that

12  you set this up for the purpose of searching out that

13  kind of fantasy and carrying it on through.  I know you

14  have been steadfast in your position that you never

15  sexually molested your daughter in the past.  It was not

16  an easy call for me to make, but based upon the evidence

17  that I have, the reports, taking a look at this whole

18  thing in context, I make that finding.

19          Again, I could not find that beyond a

20  reasonable doubt under any circumstances, but more likely

21  than not, I think there is enough there to find, and the

22  Court has made that determination.

23          Afford adequate deterrence, you know, you

24  have been in jail since your arrest.  As you stated,

25  you've lost probably most everything in your life at this

1    point.  If this hasn't deterred you at this point, I am

2    not sure what will, other than the fact to get you help

3    and get that psychological and emotional part

4    straightened out, that will help you.

5              And that goes to protecting the public

6    because if we do get you the help that you so sorely

7    need, then you are less likely to reoffend, and you don't

8    find yourself in the justice system any more, and the

9    public is protected from further behavior.

10             Is it a serious offense?  Yes.  I mean, we

11   do know that just by the nature of the offense and also

12   the possible penalties that you face.

13             But I do, again, emphasize improve offender

14   conduct and condition because that is part of the need

15   for the sentence imposed, and when we focus as much on

16   that as we do the other factors and address that, then

17   everybody is protected, and you find yourself a much

18   better and more productive citizen than when you started

19   this whole business.

20             And that's ultimately what we are looking

21   for as well as getting your personal life straightened

22   out.  Again, hopefully that's the case.

23             Just as an overview, talking about these

24   types of cases and others, the potential sentences that

25   Congress comes up with these cases and others are not

42

1    just pulled out of the air.  People don't realize all the

2    hearings that are held and all the documents that are

3    submitted, testimony that is taken.  So they get a good

4    indication of what is happening across the country.

5              And contrary to what we do or at the county

6    level, Congress has to address this on a nationwide

7    scale.  So it does the best that it can with all the

8    evidence that is brought to it and say what's best for

9    the nation as a whole, and I mean to give you an overview

10   because you should have some context as to why these

11   things are considered to be serious because there is all

12   this evidence coming into Congress saying this is a

13   problem, our children need to be protected, quite

14   frankly.

15             You know, whether it is child pornography or

16   having sex with underage children, that all goes in the

17   same pot so to speak for Congress to assess and determine

18   what's an appropriate punishment for that type of

19   behavior.  All right.

20             With that in mind, let's go ahead and

21   sentence you.  I will give you a sentence which I believe

22   is sufficient but not greater than necessary to comply

23   with the 3553(a) factors.

24             I have talked about a lot of, if you will,

25   bad things.  Before I pass sentence, let me talk about a

1   couple good things that keep you from being at the top of

2   the offenders, Mr. Kerestes.

3                You served our country, something to be

4   proud of.  You have a good work history.  You paid your

5   child support, and regardless of the personal issues that

6   you have had with your ex-wife, there is something to say

7   about supporting your family and working constantly and

8   serving our country.  I don't want to let that go by

9   because all of that is important, and it should be

10  mentioned, and I do consider that.

11               All right.  Mr. Kerestes, it is the judgment

12  of this Court that you are committed to the custody of

13  the Bureau of Prisons for a term of 87 months.  Upon

14  release from imprisonment, you will be placed on

15  supervised release for life.

16               Within 72 hours of release from the custody

17  of the Bureau, you will report in person to the U.S.

18  Probation Office in the sentencing district or in the

19  district to which you are released.  Based upon a review

20  of your financial condition, I will find that you do not

21  have the ability to pay a fine.

22               Therefore, it is waived.  Restitution is not

23  in issue in this case.  You will pay to the United States

24  a special assessment of $100, which is due immediately.

25  While on supervision, you will not commit another

1    federal, state, or local crime, shall not illegally

2    possess a controlled substance, shall comply with the

3    standard conditions that have been adopted by this Court

4    and shall comply with the following additional

5    conditions.

6              I am going to waive the mandatory drug

7    testing.  I will find that this is not drug-related, and

8    you are not at risk.

9              You shall not possess a firearm, destructive

10   device, or any dangerous weapon.  You will provide the

11   probation officer with access to any requested financial

12   information.  There will be a sex offender registration

13   and notification.  You are required to register under the

14   Sex Offender Registration and Notification Act and must

15   comply with the requirements of that Act as directed by

16   the probation officer.

17             Pursuant to the Adam Walsh Protection Act of

18   2006, you will register as a sexual offender not later

19   than three business days from the release from custody.

20   You will keep the registration current in each

21   jurisdiction in which you reside, are employed, or you

22   are a student.  You shall no later than three business

23   days after each change in name, residence, employment, or

24   status appear in person at least -- in at least one

25   jurisdiction in which you are registered and inform that

1    jurisdiction of all changes in reporting information.

2                    Failure to do so may be a violation of your

3    condition of supervised release and may be a new federal

4    offense punishable by up to ten years.  You shall not

5    associate or have verbal, written, telephone, or

6    electronic communication with any person under the age of

7    18 except, one, in the presence of the parent or legal

8    guardian of said minor, and two, on the condition that

9    the Defendant notify said parent or legal guardian of his

10   conviction in the instant offense.

11                   This provision does not encompass persons

12   under the age of 18 such as waiters, cashiers, ticket

13   vendors, et cetera, with whom Defendant must deal in

14   order to obtain ordinary and usual commercial services.

15                   You shall not associate in person or in any

16   other manner with any individual who has a sexual

17   interest in or attraction to minors, that is, persons

18   under the age of 18 nor shall you correspond with any

19   such individual without the prior express written

20   approval of the probation officer.

21                   You shall not seek obtain or maintain any

22   residence, employment, volunteer work, church, or

23   recreational activities involving minors in any way

24   without the prior express written approval of the

25   probation officer.  You shall not reside within 100

1    yards of school yards, playgrounds, theme parks, arcades

2    swimming pools, skating rinks, toy stores, and other

3    places where persons under the age of 18 play,

4    congregate, or gather without the prior express written

5    approval of the probation officer.

6              You will comply with all applicable

7    requirements to register as a sexual offender.  At the

8    direction of the probation officer, you will participate

9    in an outpatient mental health program, including

10   treatment for sexual deviancy, which may include

11   polygraph testing.

12             Mr. Warner, at this point, would you

13   recommend institutional treatment?

14             MR. WARNER:  Yes, your Honor, and we would

15   ask the Court to make the recommendation that Butner,

16   North Carolina, which offers the kind of treatment

17   Mr. Kerestes needs, and we would also ask that the Court

18   indicate in its order that Mr. Kerestes was a corrections

19   officer.  Therefore, he should not be housed in

20   Pennsylvania where he was.  That could be dangerous for

21   him.

22             THE COURT:  Okay.  Mr. Sullivan?

23             MR. SULLIVAN:  Judge, I just —— if the

24   desire to get him sex offender treatment is —— I don't

25   believe Butner is doing that any more.  I believe Devon,

1    Massachusetts -- I think there are going to be two

2    institutions.  One is Devon, Massachusetts.  I believe

3    Butner is moving toward doing the civil commitment of sex

4    offenders that was required under the Adam Walsh Act.  I

5    am not sure if you want to designate a specific

6    institution or just as the treatment.

7             THE COURT:  Right.  Mr. Warner, let's do

8    this:  I will recommend that the appropriate facility or

9    institution for treatment for sexual deviancy

10   Mr. Kerestes be sent to consistent with their assessment.

11            MR. WARNER:  Thank you, your Honor.

12            THE COURT:  Okay.  Which will include, of

13   course, the institutional treatment and also recommend

14   that Mr. Kerestes does not serve in Pennsylvania.  It is

15   up to the Bureau to decide what to do, but those will be

16   the recommendations.

17            I do not want to forget the computer

18   internet restricted -- let's go ahead and put that on the

19   record.  Defendant is prohibited from accessing any

20   online computer service at any location, including

21   employment or education, without prior written approval

22   of the U.S. Probation Office or the Court.

23            This includes any internet service provider,

24   bulletin board system, or any other public or private

25   computer network.  Any approval shall be subject to

1    conditions set by the U.S. Pretrial Services probation

2    officer or the Court with respect to that approval.

3            Defendant shall consent to the U.S.

4    Probation Office conducting periodic unannounced

5    examinations of his computer system, which may include

6    retrieval and copying of all memory from hardware,

7    software and/or removal of such systems for the purpose

8    of conducting a more thorough inspection and will consent

9    to having installed on his computer at his expense any

10   hardware or software to monitor his computer use or

11   prevent access to particular materials.

12           Defendant consents to periodic inspection of

13   any such installed hardware-software to ensure it is

14   functioning properly.  Defendant shall provide the U.S.

15   Probation Office with accurate information about his

16   entire computer system.  That includes hardware and

17   software, all passwords used by him and his internet

18   service provider and will abide by all rules of the

19   computer restriction and monitoring program.

20           Defendant shall submit his person,

21   residence, place of business, computer, or vehicle to a

22   warrantless search conducted and controlled by the U.S.

23   Pretrial Services probation office at a reasonable time,

24   in a reasonable manner based upon reasonable suspicion of

25   contraband or evidence of a violation of a condition of

1    release.  Failure to submit to a search may be grounds

2    for revocation.

3              Defendant shall inform any other residents

4    that the premises and his computer may be subject to a

5    search pursuant to this condition.  Defendant shall

6    cooperate in the collection of DNA as directed by the

7    probation officer.  All right.

8              Mr. Warner, anything further on behalf of

9    Mr. Kerestes before I read him his appellate rights?

10             MR. WARNER:  No.  Thank the Court.

11             THE COURT:  Mr. Kerestes, because you did

12   not sign a plea agreement, you do not have limited appeal

13   rights; you have full appellate rights.  If you wish to

14   appeal the conviction or sentence in this case, you must

15   do so within 10 days after entry of this Court's

16   judgment.

17             You have the right to have papers properly

18   prepared and filed on your behalf, and you do have the

19   right to counsel on appeal.  And if you cannot afford

20   counsel on appeal, of course, we will pay for counsel to

21   represent you.

22             Do you understand those rights?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And Mr. Warner, I would just ask

25   that you continue to safe guard Mr. Kerestes' rights of

 1    appeal pending any decision he may have in that regard.

 2                    MR. WARNER:  I will.  Thank you, your Honor.

 3                    THE COURT:  Okay.  Mr. Sullivan, on behalf

 4    of the Government, anything further at this point?

 5                    MR. SULLIVAN:  No.  Thank you, Judge.

 6                    THE COURT:  Mr. Gold, anything further?

 7                    MR. GOLD:  No.  Thank you.

 8                    THE COURT:  Thanks everyone.  He is

 9    remanded, and we are adjourned.(Hearing concluded at

10    12:32 p.m.)

11                        - - - - -

12                    C E R T I F I C A T E

13              I, George J. Staiduhar, Official Court

14    Reporter in and for the United States District Court,

15    for the Northern District of Ohio, Eastern Division,

16    do hereby certify that the foregoing is a true

17    and correct transcript of the proceedings herein.

18

19

20

21                    s/George J. Staiduhar
                       George J. Staiduhar,
22                     Official Court Reporter

23                     U.S. District Court
                       801 W. Superior Ave., Suite 7-184
24                     Cleveland, Ohio 44113
                       (216) 357-7128
25